IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT JAMES WATSON, | ) | CV. NO. SA-13-CV-265-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN EDDIE FLORES and KRIS | ) | |
| DESLATTE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION AND (2) DISMISSING PLAINTIFF'S COMPLAINT

Before the Court is the Objection to the Magistrate Judge's July 10,

2013 Memorandum and Recommendation filed by Plaintiff Robert James Watson

("Watson").   (Dkt. # 13.)   Pursuant to Local Rule 7(h), the Court finds this matter

suitable for disposition without a hearing.    After careful consideration, and for the

reasons given below, this Court **ADOPTS** Magistrate Judge John W. Primomo's

Memorandum and Recommendation (Dkt. # 8) and **DISMISSES WITHOUT**

**PREJUDICE** Watson's complaint and supplemental complaint for failure to state a

claim.

BACKGROUND

On April 1, 2013, Watson instituted this suit, pro se, against Defendants John Eddie Flores and Kris Deslatte (collectively, "Defendants") alleging 42 U.S.C. § 1983 claims of unreasonable search and seizure, unlawful arrest, and false imprisonment.   ("Compl.," Dkt. # 2 at 4–5).   In his original complaint, Watson alleged that on April 13, 2011, Defendant Deslatte, an investigator for the Narcotics Division for the Guadalupe County Sheriff's Office under the supervision of Defendant Flores, included false information in an affidavit for a search warrant. (Id. at 2–3.)   Watson claims that Deslatte stated he had received information from an unnamed, credible and reliable source that Watson was seen with a useable amount of cocaine within the past forty-eight hours at Watson's residence; however, Watson asserts that this information is false.   (Id.)   Deslatte's search warrant affidavit stated the following:

> Affiant was provided with information from a Credible and Reliable Source (that for safety reasons will remain unnamed).   The Credible Source has provided Affiant information in the past over four (4) times and each time the Source provided information, this information has led to the seizure of illegal narcotics.   This Credible Source is familiar with Cocaine by sight, because this Credible Source has purchased Cocaine for Affiant in the past while working as a Credible Source.

> Affiant received information from this Credible Source stating that the Credible Source had seen Robert James Watson with a usable amount of Cocaine within the past 48 hours at Watsons' residence of 2310 Sherman Street, in the City of Seguin, Guadalupe County, Texas. Robert Watsons' criminal history shows that Watson was convicted of

2

delivery of Cocaine in the past.[1]

(Dkt. # 8 at 5–6.)

Watson claims that at the time Deslatte made the affidavit, he knew the source, Melvin Bruns, was not a credible source.   Specifically, Watson claims that Bruns was "an active criminal with a serious criminal background and was a convicted felon whom had violated his first contract as a confidential informant when he was arrested in Caldwell County for forgery."   (Compl. at 3.)   Also, Watson alleges that "when defendant made this affidavit he knew Melvin Bruns was in violation of his second confidential informant in violation of the code of conduct." (Id.)

Based on the affidavit, the magistrate judge issued a search warrant. Watson alleges that Defendants executed the search warrant and Deslatte located a jewelry box in Watson's home with a stain in it that tested positive for cocaine. (Id.)   According to Watson, even though no cocaine was found and the warrant authorizing the search did not authorize his arrest, he was arrested and booked into the Guadalupe County Jail for possession of less than a gram of cocaine.   Because he was on parole, he was unable to post bond.   On June 29, 2011, the Guadalupe County District Attorney declined to prosecute the case.

---

[1] The search warrant was obtained from the Guadalupe County Clerk and was quoted in the Magistrate Judge's Memorandum and Recommendation.

Watson alleges that Defendants subjected him to an unreasonable search and seizure because Deslatte "deliberately and recklessly included false information in an affidavit in support of a search warrant" and Flores approved Deslatte's actions, knowing the information was false.  (Id. at 5.)  Next, he asserts that Defendants subjected him to an unlawful arrest without probable cause or an arrest warrant.  (Id.)  Finally, he contends that the actions of Defendants caused him to be falsely imprisoned.  (Id. at 6.)

On May 24, 2013, Magistrate Judge Primomo found that Watson should file a supplemental complaint containing a factual and legal basis for claiming that the information contained in the search warrant affidavit was false. (Dkt. # 4.)  On July 3, 2013 Watson complied with the Magistrate Judge's order and filed a supplemental complaint.  ("Supp. Compl.," Dkt. # 7.)  Watson contended that he had stated a claim upon which relief can be granted for unreasonable search, unlawful arrest, and false imprisonment.  Watson cited various reasons, allegedly known by Deslatte, which implicated Bruns' credibility and reliability as an informant.  He stated that on the day before the search warrant was executed, Deslatte had lost contact with Bruns who, in violation of his contract as a confidential source, became a "fugitive from justice."  (Supp. Compl. at 4.) Watson asserted that in the past, Bruns, while acting as a confidential informant, had violated the law by the commission of three forgery offenses, resulting in the

4

termination of his contract as a confidential informant in April 2010.   (Id.)   Watson also alleged that on March 15, 2011, Bruns was placed on probation for five years and two weeks later he was arrested for evading arrest in a motor vehicle.   (Id.) Also, according to Watson, on April 1, 2011, Bruns was indicted in Guadalupe County on another forgery charge.   (Id.)   He asserts that on April 5, 2011, Bruns entered into a second contract with the Guadalupe County Narcotics Division to work off the evading arrest and forgery charges.   (Id.)   Watson claimed that the state district court initially refused to allow Bruns to be released due to his past criminal offenses, but that on April 8, 2011, the Guadalupe county District Attorney made it possible for Bruns to be released to fulfill his contract as a confidential source.   (Id.)   Watson also contended that on April 13, 2011, the search warrant was executed and he was arrested for possession of cocaine and drug paraphernalia. (Id. at 5.)

The search warrant return, which was obtained from the Guadalupe County Clerk and cited in the Magistrate Judge's Memorandum and Recommendation, reflects that the officers seized a trace amount of cocaine, a portable digital scale, and a marijuana pipe with marijuana residue.   (Dkt. # 8 at 6.) The cocaine charge was subsequently dismissed, and Watson was never prosecuted for possession of drug paraphernalia.   However, records of the Guadalupe County Clerk reflect that on August 15, 2011, Watson was indicted for delivery of one to

5

four grams cocaine on or about April 12, 2011—one day prior to the execution of the search warrant.   After a jury trial in February 2012, Watson was found guilty and was sentenced as a repeat offender.   A report obtained from the Guadalupe County Narcotics Unit indicates that the charge arose from Watson's delivery of cocaine to a confidential source at Watson's residence on April 12, 2011.   (Dkt. # 8 at 6.)

On July 10, 2013, Magistrate Judge Primomo dismissed Watson's Supplemental Complaint in a Memorandum and Recommendation.   ("Mem.," Dkt. # 8.)   On August 1, 2013, Watson filed objections to the Magistrate Judge's Memorandum that are currently before the Court.   ("Obj.," Dkt. # 13.)

<u>STANDARD OF REVIEW</u>

I.     <u>Review of a Magistrate Judge's Report and Recommendation</u>

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.   <u>See</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").   The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.   <u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985).   A district court need not consider "[f]rivolous, conclusive, or general objections."   <u>Battle v. U.S. Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).   "A judge of the court may accept, reject, or modify, in whole

6

or in part, the findings or recommendations made by the magistrate judge."   28

U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de

novo review; the Court need only determine whether the Report and

Recommendation is clearly erroneous or contrary to law.   United States v. Wilson,

864 F.2d 1219, 1221 (5th Cir. 1989).

II.   Rule 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a

claim upon which relief can be granted."   Review is limited to the contents of the

complaint and matters properly subject to judicial notice.   See Tellabs, Inc. v.

Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).   In analyzing a motion to

dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff.'"   In re Katrina Canal

Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr.

Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).   To survive a

Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

7

<u>DISCUSSION</u>

I.    <u>Objections to the Report and Recommendation</u>

Watson objects that the findings of the Magistrate Judge are "clearly erroneous."   (Obj. at 2.)   He asserts multiple arguments, each of which will be addressed in turn.

As a preliminary matter, in order to prevail on any of his claims (unlawful search, unlawful/false arrest, false imprisonment), Watson must demonstrate a lack of probable cause.   <u>See</u> <u>Club Retro, L.L.C. v. Hilton</u>, 568 F.3d 181, 208 (5th Cir. 2009) ("A search and seizure of a person must be based on probable cause …."); <u>Haggerty v. Tex. Southern Univ.</u>, 391 F.3d 653, 655 (5th Cir. 2004) ("To ultimately prevail on his section 1983 false arrest/false imprisonment claim, Haggerty must show that [Defendant] did not have probable cause to arrest him."); <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5th Cir. 1995) ("[I]f there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.").

a.    <u>Objection to the Magistrate Judge's Interpretation of the Affidavit</u>

Watson first takes issue with the Magistrate Judge's interpretation of the affidavit that supported the search warrant.   (Obj. at 2.)   He argues that the statements in the affidavit make no mention of a delivery, but only allege the source had seen cocaine.   Watson cites <u>United States v. Ventresca</u>, 85 S. Ct. 741 (1965),

8

for the proposition that the court must interpret affidavits for arrest in a realistic

manner and, because there was no mention of a delivery of cocaine, it cannot be

assumed.   (Id.)

Watson appears to argue that because the affidavit mentioned delivery

of cocaine and, in the execution of the search warrant, the officers did not catch him

in the act of delivering cocaine, his subsequent arrest for possession of cocaine and

drug paraphernalia was invalid.   However, the search warrant and the supporting

affidavit clearly pertained to the search for cocaine.   While the affidavit included a

statement that the officer knew Watson's criminal history included a conviction for

delivery of cocaine, the search warrant was not to catch Watson in the act of

delivering cocaine, but rather was a warrant to search for cocaine at his residence.

The search warrant was supported by Deslatte's affidavit that a confidential

informant told him he had seen cocaine at Watson's house within the last forty-eight

hours.   The fact that Watson was later charged with and convicted for delivery of

cocaine occurring on April 12 (one day before the execution of the search warrant)

has no bearing on the affidavit supporting the search warrant for the search of

cocaine on April 13, 2011.   Watson's objection is overruled.

      b.    <u>Objection to the Magistrate Judge's Conclusion that the Omission of Facts Did Not Render the Affidavit Misleading</u>

Watson also objects to the Magistrate Judge's conclusion that the

omission of Bruns' criminal history and failure to abide by his previous contract as a confidential informant did not render the affidavit misleading.   (Obj. at 2)   Watson asserts that this conclusion misconstrues the facts as asserted by him and "does not acknowledge the facts as they are plead [sic] in regards to Melvin Bruns credibility and reliability."   (Id.)   Watson argues that his complaint reflects that Bruns was an active criminal who violated his first contract as a confidential informant, was arrested for forgery, and on April 13, 2011, was a fugitive from justice.   Watson asserts that this information, if known by the magistrate who signed the search warrant, would have rendered the information provided to Deslatte not credible or unreliable.   (Id. at 3.)   Watson's argument, however, fails.

In United States v. Naranjo, the Fifth Circuit held than an officer's omission from a search warrant affidavit of information about the informant did not negate a finding of probable cause to support a warrant.   309 F. App'x 859 (2009). Naranjo asserted that the officer did not tell the issuing magistrate that the informant was "a known con man with a criminal record who had previously acted as informant."   Id. at 863.   Thus, Naranjo argued that in light of those omissions officers could not have relied on the warrant in good faith, and that any evidence seized should have been suppressed.   Id.   The Fifth Circuit disagreed, concluding that the omitted information, had it been made known, would not have adversely affected probable cause.   Id. at 864.   The court concluded that even had the

magistrate been made aware of the informant's reputation and record, the affidavit nevertheless established a sufficient basis for probable cause to search the apartment.   Id.   In so deciding, the court noted that it was clear from the affidavit that the tip was not anonymous, the informant had "provided detailed information, based on his personal first-hand knowledge," and, additionally, the affidavit indicated that the officer had prior knowledge of Naranjo's involvement in drug trafficking. Id. 864–65.

Here, like in Naranjo, Deslatte included in his affidavit that the information was provided from a credible and reliable source that had previously provided Deslatte with information at least four times with each time resulting in the seizure of illegal narcotics.   Also, Deslatte indicated in the affidavit that the credible source had personally seen Watson with a useable amount of cocaine in the past forty-eight hours at Watson's residence.   Finally, Deslatte averred that Watson's criminal history included a conviction for delivery of cocaine in the past. As noted by the Magistrate Judge in his Memorandum, Watson does not contest the validity of the statements in the affidavit.   Thus, as in Naranjo, even assuming Watson's allegations regarding Bruns as true, those facts, if presented to the magistrate, would not have adversely affected a determination of probable cause.

      c.     <u>Objection to the Magistrate Judge's Analysis of Alleged Facts to Support the Falsity of Bruns' Statements</u>

        Next, Watson asserts that he sufficiently alleged that Deslatte knew or should have known that Bruns' information was false and that Deslatte's failure to recognize the falsity was reckless disregard for the truth.   (Obj. at 4.)   Watson alleges that the statement to Deslatte that Bruns had seen Watson with a useable amount of cocaine within the past forty-eight hours was false because Deslatte did not have any contact with Bruns on the 13th as Bruns was "on the run" from the narcotics task force on that day after he broke contact with them on April 12th. (<u>Id.</u>)   However, even accepting Watson's allegations as true, the affidavit that served the basis for the search warrant, issued on April 13, stated that <u>in the past 48 hours</u> Watson was seen with a useable amount of cocaine.   Thus, Bruns could have informed Deslatte on April 11 of what he had witnessed and the affidavit submitted by Deslatte indicated that Watson was seen with cocaine in the forty-eight hours prior to the April 13 search warrant.   Accordingly, Watson's allegations, even accepted as true, do not demonstrate the falsity of the statements contained in the search warrant affidavit.

      d.     <u>Objection to the Magistrate Judge's Characterization of his Allegations/Complaint</u>

        Watson also objects to the Magistrate Judge's statements that Watson does not dispute the presence of a trace amount of cocaine and does not deny

12

possession of a marijuana pipe with residue.   (Obj. at 4.)   Watson objects because
this portion of the Memorandum "does not acknowledge the well pleaded factual
content in plaintiff's original and supplemental complaint which are [sic] sufficient
to show no probable cause existed when he was arrested."   (Id.)   Essentially,
Watson reasserts his argument that there was no probable cause to support the search
warrant that ultimately led to his arrest.   For the reasons stated above, however, the
search warrant was supported by probable cause.   Once the officers found the drug
paraphernalia and trace amounts of cocaine, the officers had probable cause to arrest
Watson.   As the Magistrate Judge points out, Watson does not deny the presence of
cocaine, nor does he deny the possession of a marijuana pipe with marijuana residue.

   e.   Objection to the Magistrate Judge's Conclusion That Watson Was At
       No Time Held Without Probable Cause

       Watson also objects to the Magistrate Judge's statement that "at no
time was [Watson] confined without probable cause" because it is "clearly
erroneous."   (Obj. at 4 (citing Mem. at 14).)   He reasserts his arguments as to why
he claims the search warrant was not supported by probable cause, claiming the
search warrant "contained no circumstances necessary to enable the magistrate to
independently judge the validity of the conclusion that plaintiff had a useable
amount of cocaine in his possession two days after the credible source alleged to
have seen plaintiff with that useable amount of cocaine."   (Id. at 6.)   He further

13

argues, essentially, that after not being able to find a useable amount of cocaine (which is what the search warrant alleged) he could not then be arrested for trace amounts of cocaine and drug paraphernalia.   (Id. at 5 ("Deslatte seized an empty jewelry box, which was not an implement or instrument used in the offense of delivery of a controlled substance or cocaine trafficking . . . and when the bottom of the box allegedly tested positive for cocaine Deslatte with the approval of Flores placed plaintiff under arrest at the time for possession of cocaine.").)   He asserts that "defendants did not witness plaintiff commit any crime prior to placing him under arrest and did not have a warrant for his arrest."   (Id. at 6.)   Watson's arguments are erroneous.

Watson seemingly argues that Deslatte's testing of the substance at the bottom of a jewelry box is an "unreasonable search."   Case law, however, dictates otherwise:

> A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy.   This conclusion is not dependent on the result of any particular test. . . . Congress has decided—and there is no question about its power to do so—to treat the interest in "privately" possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguable "private" fact, compromises no legitimate privacy interest.

United States v. Jacobsen, 466 U.S. 109, 123 (1984).

The officers had a warrant to search for cocaine, an illegal substance

14

the possession of which is a crime.   The officers found a jewelry box in Watson's home, and a field test of a substance at the bottom of the jewelry box was conducted to determine whether that substance was, in fact, cocaine.   The substance tested positive for cocaine, which is what the search warrant pertained to.   Nothing about the officers' conduct was unreasonable in these circumstances.

      f.      <u>Objection to Heightened Pleading Standard</u>

Watson also objects to the heightened pleading standard used in the memorandum.   (Obj. at 9.)   He asserts that a plaintiff no longer needs to anticipate the qualified immunity defense in his complaint at the risk of dismissal under Rule 12.   (<u>Id.</u>)

In his Memorandum, the Magistrate Judge noted that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of what a reasonable person would have known.   (Mem. at 8–9.)   The Magistrate Judge noted that heightened pleading in qualified immunity cases requires that plaintiffs rest their case on more than conclusions alone and plead their case with precision and factual specificity.   (<u>Id.</u> at 9)

Indeed, "when a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff."   <u>Morin v. Caire</u>, 77 F.3d 116, 121 (5th Cir. 1996).   "The court must first demand that a plaintiff must file 'a

short and plain statement of his complaint, a complaint that rests on more than

conclusions alone.'"   Id. (quoting Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995)).

Here, however, Defendants have not yet responded and have not yet asserted a

qualified immunity defense.   The Fifth Circuit has held that a plaintiff is no longer

required to "fully anticipate the defense [of qualified immunity] in his complaint at

the risk of dismissal under Rule 12."   Todd v. Hawk, 72 F.3d 443, 446 (5th Cir.

1995) (quoting Schultea, 47 F.3d at 1430); see also Lugo v. Housing Auth. of City of

Donna, No. 94-60743, 1995 WL 581994, at *1 (5th Cir. 1995) ("Under Schultea,

plaintiffs need no longer anticipate a qualified immunity defense in the complaint.

If the complaint states a claim under normal pleading standards, the defendant must

raise his qualified immunity defense in an answer, and if he does so, the district court

may, in its discretion, insist that plaintiff file a reply tailored specifically to the issue

of qualified immunity." (internal citations omitted)).

    However, the Magistrate Judge, in reciting the normal pleading

standard under Rule 8, first concluded that Watson's claim that probable cause was

lacking for the search, arrest, and imprisonment is not sufficient to state a claim.

(Mem. at 8.)   The Magistrate Judge noted that "[h]e must plead facts in support of

his causes of action which give those claims facial plausibility."   (Id.)   Thus, the

Magistrate Judge concluded that Watson did not plead sufficient facts to meet Rule

8's plausibility standard.   Only after denying Watson's claims under the normal

16

pleading standard did the Magistrate Judge note: "[a]dditionally, Flores and Deslatte are entitled to raise the defense of qualified immunity to the claims against them in their individual capacity."   (Id.)   The Magistrate Judge then proceeded to set forth the "heightened" pleading standard required in those cases in which a defense of qualified immunity applies.

Therefore, while Watson need not "fully anticipate the defense [of qualified immunity] in his complaint at the risk of dismissal under Rule 12," Todd, 72 F.3d at 446, the Magistrate Judge's conclusion that Watson's claims did not meet the normal pleading standard because he did not plead sufficient facts in support of his causes of action indicates to the Court that while the Magistrate Judge may have concluded Watson did not meet the heightened pleading standard, he did so after concluding that Watson did not meet the normal pleading standard.   This Court agrees that Watson's allegations do not meet the normal pleading standards because he has not sufficiently alleged a lack of probable cause; therefore, the Court agrees with the Magistrate Judge's recommendation that the complaint be dismissed without prejudice for failure to state a claim.

    g.    <u>Objection to the Magistrate Judge's Conclusion That the Complaint Be Dismissed</u>

Finally, Watson objects to the Magistrate Judge's recommendation that his complaint be dismissed without prejudice for failure to state a claim "because he

has alleged a violation of his rights to be free from unreasonable search and seizure [sic], false arrest and false imprisonment, and has shown that the violation of these rights secured by the constitution and laws of the United State has been violated by the narcotics task force officers acting under color of state law, and therefore he has state a claim(s) under § 1983." (Obj. at 9.) For the reasons discussed thoroughly above, however, the Court disagrees with Watson; he has not stated a claim and his complaint is therefore dismissed without prejudice.

CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Memorandum and Recommendation (Dkt. # 8); Watson's complaint is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, May 6, 2014